# Illinois Official Reports

## Appellate Court

*People v. West*, 2017 IL App (1st) 143632

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ESAU WEST, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-3632 |
| Filed | January 17, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-1930; the Hon. Neil J. Linehan, Judge, presiding. |
| Judgment | Affirmed; mittimus corrected. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Carolyn R. Klarquist, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Whitney Bond, and Radhika Lohia, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Presiding Justice Hyman and Justice Neville concurred in the judgment and opinion. |

¶ 1    Following a bench trial, defendant Esau West was convicted of (1) armed habitual criminal (AHC), (2) aggravated unlawful use of a weapon (AUUW), and (3) unlawful use of a weapon (UUW) by a felon. The trial court imposed a six-year imprisonment term for each conviction, to be served concurrently. On appeal, West claims that (1) his jury waiver was invalid because the trial court failed to adequately admonish him, (2) the AHC statute is facially unconstitutional, and (3) his AUUW conviction must be vacated because it was based on the same physical act—possession of a loaded firearm—as his AHC conviction. Because we find no merit in West's claims regarding the invalidity of his jury waiver and the facial unconstitutionality of the AHC statute, we affirm West's AHC and UUW by a felon convictions and sentences. But, as the State concedes we should, we vacate the less serious AUUW conviction as violating the one-act, one-crime rule and direct the clerk of the circuit court to correct the mittimus accordingly.

¶ 2                                    BACKGROUND

¶ 3    Because the police found West in possession of a 9-millimeter semiautomatic handgun loaded with 13 rounds of ammunition, the State charged him with (1) one count of AHC, (2) four counts of AUUW, and (3) two counts of UUW by a felon. After the trial court denied West's motion to dismiss, his case proceeded to trial.

¶ 4    Before his trial began, West signed a written jury waiver form, which was tendered to the trial court. The written jury waiver form stated that "I, the undersigned, do hereby waive the jury trial and submit the above entitled cause to the Court for hearing." Thereafter, the following colloquy occurred between the trial court, defense counsel, and West.

>    "THE COURT: All right. And your client has executed a Jury Waiver, is that correct?
>
>    MR. GREENBERG [Defense Attorney]: Yes.
>
>    THE COURT: Mr. West, is this your signature on this document?
>
>    THE DEFENDANT: Yes.
>
>    THE COURT: Understand that by signing that document and handing it to me, you're indicating that you wish to waive your right to a jury trial?
>
>    THE DEFENDANT: Yes.
>
>    THE COURT: Do you understand by tendering that document to me, I'll hear the evidence rather than a jury, is that what you wish to have happen?
>
>    THE DEFENDANT: Yes.
>
>    THE COURT: All right, Jury Waiver will be accepted, made a permanent part of the record."

¶ 5    The facts of West's bench trial are largely undisputed and of limited relevance to the issues he raises on appeal, and so, we only briefly summarize them. On January 10, 2012, at approximately 10:40 p.m., officer Derouin of the Chicago police department responded to a call of a "man with a gun," who was later identified as West, located in a gangway at 89th Street and Woodlawn Avenue in Chicago. After the police vehicle arrived in the area and turned down an alley, officer Derouin saw West walking down the alley in the opposite

direction. The police vehicle began to chase West, who fled on foot, and when West was about four or five residences away, he attempted to jump over a three-foot tall chain-link fence but fell over it, landing on the other side. Officer Derouin exited the police vehicle and yelled "Police." By that point, West was already on the ground, and officer Derouin saw him throw a handgun, which landed on the ground a couple of feet away. Officer Derouin jumped the same fence, apprehended West, and recovered the handgun, which was a 9-millimeter semiautomatic Smith & Wesson handgun loaded with 13 rounds of ammunition.

¶ 6 The State also introduced evidence that West had never been issued a firearm owners identification (FOID) card and that he had been convicted of attempted murder on August 10, 1998, and UUW by a felon on April 3, 1996. The trial court denied West's motion for a directed finding, and the defense rested without presenting any evidence.

¶ 7 The trial court found West guilty of (1) AHC (a Class X felony), (2) AUUW with a previous conviction (a Class 2 felony), and (3) UUW by a felon (a Class 2 felony). West was sentenced to concurrent terms of six years' imprisonment for each conviction. West filed a motion for a new trial asserting that he was not proved guilty beyond a reasonable doubt because the State offered no proof that the recovered item was, in fact, a firearm. After the trial court denied West's motion, he timely appealed.

¶ 8                                                    ANALYSIS

¶ 9 West first challenges the validity of his jury waiver, claiming that (1) the trial court's admonishments failed to adequately inform him of the difference between a jury and bench trial and (2) he did not understandingly waive his right to a jury trial. Specifically, West contends that his waiver was not valid because the trial court failed to ensure that he understood (1) how a jury was selected, (2) his right to cross-examine the State's witnesses and present his own witnesses and evidence in a jury trial, (3) that a jury's decision regarding his guilt must be unanimous, and (4) that the State had the burden of proof in either a jury or bench trial. West claims that his convictions should be reversed and his case remanded for a new trial due to his invalid jury waiver.

¶ 10 Our federal and state constitutions guarantee the right to a jury trial. *People v. Bracey*, 213 Ill. 2d 265, 269 (2004); U.S. Const., amends. VI, XVI; Ill. Const. 1970, art. I, §§ 8, 13. But a defendant may waive that right. *Bracey*, 213 Ill. 2d at 269; 725 ILCS 5/103-6 (West 2012). For a jury waiver to be valid, the defendant must understandingly waive his right to a jury trial in that the waiver is both knowing and voluntary. *People v. Tooles*, 177 Ill. 2d 462, 468 (1997) (citing 725 ILCS 5/103-6 (West 1992), and *People v. Smith*, 106 Ill. 2d 327, 334 (1985)). A written jury waiver is one means by which a defendant may waive his right, but a written waiver is not conclusively a valid waiver. *Bracey*, 213 Ill. 2d at 269-70. A court need not give any specific admonishment or advice for a waiver to be effective; instead, the determination of whether a jury waiver is valid depends on the facts and circumstances of a particular case. *Id.* at 269; *People v. Tye*, 141 Ill. 2d 1, 24 (1990). Indeed, there is no precise formula to apply to determine whether a jury waiver is valid. *Bracey*, 213 Ill. 2d at 269. In essence, for a jury waiver to be effective, the trial court must ensure that the defendant knows that the facts of his case would be determined by a judge and not a jury and the resulting consequences of that decision. *People v. Bannister*, 232 Ill. 2d 52, 69 (2008). A jury waiver is generally valid where defense counsel waives that right in open court and the defendant does not object to the waiver. *Bracey*, 213 Ill. 2d at 270. West bears the burden of establishing that

- 3 -

his jury waiver was invalid, which is an issue we review *de novo*. *People v. Reed*, 2016 IL App (1st) 140498, ¶ 7.

¶ 11 West acknowledges that he did not raise the validity of his jury waiver in the trial court but contends that his forfeited claim is reviewable under the plain error doctrine because his claim entails a violation of his fundamental right to a jury trial guaranteed by our federal and state constitutions—an issue properly considered under a plain error analysis. *Bracey*, 213 Ill. 2d at 270. Of course, the precursor to a discussion of plain error is the determination that an error occurred in the trial court. *People v. Walker*, 232 Ill. 2d 113, 124 (2009) (initial step in plain error analysis is to determine whether error occurred at all); *People v. Smith*, 372 Ill. App. 3d 179, 181 (2007) (without error there can be no plain error). The State concedes that West's claim is reviewable for plain error but contends that there is no error.

¶ 12 Given the facts here, we agree with the State that there was no error because West understandingly waived his right to a jury trial. Importantly, West does not dispute that he tendered a signed written jury waiver form to the trial court and was present in open court when the trial court addressed that jury waiver. West, rather, asserts that the waiver's language was too cursory, offering no explanation of the difference between a jury and bench trial and that the trial court failed to adequately admonish him regarding his right to a jury trial and waiver of that right. But as demonstrated by the record, the trial court adequately admonished West that by signing the waiver form and tendering it to the court, he would be waiving a jury trial and that the court, and not a jury, would hear the evidence. Consequently, the trial court adequately conveyed to West that his case would not be heard by a jury. The fact that the trial court did not inquire into whether West's waiver was the product of any promise or threat is an insufficient basis to undermine his otherwise valid waiver. Significantly, at no point did West object to his case proceeding to a bench trial despite his presence in court; instead, he affirmatively indicated that he understood he was waiving his right to have a jury hear the evidence in his case.

¶ 13 West's criminal history reinforces our conclusion that his jury waiver was valid. West had multiple prior felony convictions (seven adult felony convictions) and extensive experience with the judicial system, creating the reasonable presumption that he knew what a jury trial was and understood his right to a jury trial but chose not to exercise that right. See *Bannister*, 232 Ill. 2d at 71. West's prior experience with the judicial system belies any claim that he did not know or understand judicial proceedings and, in particular, the difference between a bench and jury trial.

¶ 14 West claims that the admonishments in his case were inadequate when compared to those in *People v. Tooles*, 177 Ill. 2d 462, 469-70 (1997). Although we recognize that the admonishments in *Tooles* were more expansive, the *Tooles* court explicitly stated that while a trial court must ensure that a defendant's waiver of his right to a jury trial is understandingly made, "no set admonition or advice is required before an effective waiver of that right may be made." *Id.* at 469. Likewise, West's reliance on *People v. Sebag*, 110 Ill. App. 3d 821, 829 (1982), is misplaced because although the trial court's admonishments were found inadequate for failing to inquire into whether the defendant understood what a jury trial was, the defendant in *Sebag*, unlike West, was unfamiliar with criminal proceedings and was not represented by counsel. In essence, West is urging this court to compare the trial court's admonishments in his case to unassailable admonishments, but case law is clear that there are

no set admonishments that must be given to find a jury waiver valid. *Tooles*, 177 Ill. 2d at 469.

¶ 15 Although we conclude that West validly waived his right to a jury trial, we note that 40 years ago our supreme court observed that trial courts could avoid any claimed error on this point by providing a defendant with the following admonishments and eliciting a response from the defendant reflecting that he (1) understands he is entitled to a jury trial, (2) understands what a jury trial is, and (3) wishes to be tried by a jury or by the court without a jury. *People v. Chitwood*, 67 Ill. 2d 443, 448-49 (1977); *People v. Bell*, 104 Ill. App. 2d 479, 482 (1969). Moreover, trial courts should ensure a defendant wishing to waive his right to a jury trial executes a written jury waiver. " 'This simple procedure incorporated in the record will reduce the countless contentions raised in the reviewing courts about jury waivers.' " *Chitwood*, 67 Ill. 2d at 449 (quoting *Bell*, 104 Ill. App. 2d at 482).

¶ 16 Here, taking into account the trial court's admonishments coupled with the signed jury waiver, West's representation by counsel, his presence in court, his verbal assent to waive a jury trial, and his prior exposure to the criminal justice system, we conclude that West understandingly waived his jury trial. *People v. Clay*, 363 Ill. App. 3d 780, 791 (2006). Because there was no error relating to West's jury waiver, there can be no plain error, and we need not consider this issue further.

¶ 17 West next challenges the constitutionality of the AHC statute, contending it violates due process because it criminalizes both the lawful and unlawful possession of a firearm with the potential effect of criminalizing innocent conduct. West claims that the AHC statute is facially unconstitutional because it criminalizes the possession of a firearm by a felon twice convicted of statutorily enumerated offenses even though the Firearm Owners Identification Card Act (FOID Card Act) does not criminalize that same possession, since a twice-convicted felon may qualify for a FOID card in limited circumstances under that Act. 430 ILCS 65/5, 8, 10 (West 2012). Simply put, West claims that only the possession of a firearm *without* a FOID card is illegal under Illinois law, but the AHC statute criminalizes possession of firearm by a repeat felon even if he possesses a valid FOID card. Thus, West asserts that the AHC statute is facially unconstitutional because it criminalizes a twice-convicted felon's possession of a firearm regardless of the fact that he may have a valid FOID card and lawfully possess the firearm.

¶ 18 The Criminal Code of 2012 defines the offense of AHC as being a person who "(a) *** receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses: *** (2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; aggravated discharge of a firearm." 720 ILCS 5/24-1.7(a)(2) (West 2012).

¶ 19 Under section 8 of the FOID Card Act (430 ILCS 65/8(c) (West 2012)), a convicted felon may have his or her FOID card revoked and seized or application denied. But under section 10(c) (430 ILCS 65/10(c) (West 2012)), a convicted felon who is prohibited from acquiring a FOID card may apply to the Director of State Police or the circuit court, as applicable, requesting relief from that prohibition. The director or court may grant the requested relief in specific enumerated instances, including where "the applicant has not been convicted of a forcible felony *** within 20 years of the applicant's application for a [FOID] Card, or at least 20 years have passed since the end of any period of imprisonment imposed in relation to that conviction." 430 ILCS 65/10(c)(1) (West 2012). Basically, section 10 provides

guidelines for the individual review of a felon's application for a FOID card. Based on this "individual review," West contends that a person convicted under the AHC statute could lawfully possess a FOID card. Thus, West claims that the AHC statute criminalizes potentially innocent conduct and has no rational relationship to the statute's intended purpose.

¶ 20    As an initial matter, West does not contend that he had applied for a FOID card and was denied one. But West does not raise an "as applied" challenge to the constitutionality of the AHC statute; instead, he mounts a facial challenge arguing that the statute violates due process because it is unenforceable against anyone. *People v. Fulton*, 2016 IL App (1st) 141765, ¶ 19. Consequently, because West claims that he was convicted under a facially unconstitutional statute, he has suffered an injury and has standing to challenge the AHC statute's constitutionality. *Id.*

¶ 21    Notably, an attack on a statute as facially unconstitutional is the most difficult challenge to mount. *People v. Davis*, 2014 IL 115595, ¶ 25. Only where there are *no* circumstances in which the statute could be validly applied is a statute facially unconstitutional. *Id.* A statute is not facially invalid merely because it *could* be unconstitutional in some circumstances. *Id.* Accordingly, a facial challenge cannot succeed if any circumstance exists where the statute could be validly applied. *Id.* The constitutionality of a statute is a question of law we review *de novo*. *Id.* ¶ 26.

¶ 22    A facial unconstitutionality challenge to the AHC statute on grounds identical to those raised by West has been previously considered and rejected by two different panels of this court in *People v. Johnson*, 2015 IL App (1st) 133663, and *People v. Fulton*, 2016 IL App (1st) 141765. West urges this court not to follow *Johnson* and *Fulton* because those cases were silent regarding the required individualized consideration of a person's right to possess a firearm as recognized in *Coram v. State of Illinois*, 2013 IL 113867, ¶ 58. But *Johnson* and *Fulton* found *Coram* inapposite because it analyzed a prior version of the FOID Card Act (pre-2013 amendments) in upholding the individualized consideration of a person's right to possess a firearm. *Johnson*, 2015 IL App (1st) 133663, ¶ 29; *Fulton*, 2016 IL App (1st) 141765, ¶ 24. *Fulton* further found *Coram* distinguishable because it did not address the constitutionality of the AHC statute. *Fulton*, 2016 IL App (1st) 141765, ¶ 24. We find no basis to invalidate the substantial authority upholding the constitutionality of the AHC statute and adopt the soundly reasoned decisions in *Johnson* and *Fulton*. Accordingly, we reject West's claim that the ACH statute is facially unconstitutional as a violation of due process.

¶ 23    Finally, West contends that his conviction for AUUW must be vacated on the basis that it violates the one-act, one-crime rule because it encompasses the same physical act leading to his conviction for AHC. Specifically, West claims that his possession of a single 9-millimeter handgun containing 13 rounds of ammunition improperly lead to his convictions for both AUUW and AHC.

¶ 24    The one-act, one-crime rule prohibits convictions for multiple offenses based on the same single physical act. *People v. Miller*, 238 Ill. 2d 161, 165 (2010); *People v. King*, 66 Ill. 2d 551, 566 (1977). Under the one-act, one-crime rule, a court should impose a sentence on the more serious offense and vacate the less serious offense. *People v. Smith*, 233 Ill. 2d 1, 20 (2009); *People v. Artis*, 232 Ill. 2d 156, 170 (2009).

¶ 25    The State acknowledges that West's convictions for AHC and AUUW are both based on West's possession of the same loaded 9-millimeter handgun and concedes that his less

serious conviction of AUUW must be vacated. We agree with the parties that West's convictions for AHC and AUUW violate the one-act, one-crime rule because they arose out of the same physical act—possession of the same loaded firearm. Because West's AUUW conviction is a Class 2 felony (720 ILCS 5/24-1.6(d)(3) (West 2012)) and his AHC conviction is a Class X felony (720 ILCS 5/24-1.7(b) (West 2012)), we vacate the less serious offense of AUUW and direct the clerk of the circuit court to correct West's mittimus by vacating the AUUW conviction. We affirm the trial court's judgment in all other aspects.

¶ 26                                   CONCLUSION

¶ 27       Finding West's jury waiver valid and the AHC statute facially constitutional, we affirm West's convictions and sentences for AHC and UUW by a felon. But we vacate West's conviction for AUUW for violating the one-act, one-crime rule and order West's mittimus corrected accordingly.

¶ 28       Affirmed; mittimus corrected.