**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240039-U

Order filed December 4, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0039 Circuit No. 23-CF-1530 |
| | ) ) | Honorable |
| JEREMY PETERS, | ) ) | David M. Carlson and Carmen J. Goodman, |
| Defendant-Appellant. | ) | Judges, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Albrecht and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The circuit court's admonishments substantially complied with Illinois Supreme Court Rule 401(a). Further, section 24-1.1(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.1(a) (West 2022)), criminalizing the possession of a weapon by a felon, is constitutional on its face and as applied. However, defendant's theft conviction violates the one-act, one-crime doctrine and is therefore vacated.

¶ 2    Defendant, Jeremy Peters, appeals his convictions for armed violence, unlawful possession of a weapon by a felon, and theft and his 15-year sentence. On appeal, defendant argues (1) the court failed to properly admonish him pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1,

1984)), (2) the statute criminalizing the possession of a weapon by a felon is unconstitutional both facially and as applied to him, and (3) his conviction for theft violates the one-act, one-crime doctrine. We vacate defendant's theft conviction and otherwise affirm the circuit court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged by indictment with armed violence (720 ILCS 5/33A-2(a) (West 2022)), burglary (*id.* § 19-1(a)), unlawful possession of a weapon by a felon (UPWF) (*id.* § 24-1.1(a)), defacing identification marks on a firearm (*id.* § 24-5(b)), and theft (*id.* § 16-1(a)(1)(A)) for allegedly stealing an all-terrain vehicle (ATV) while possessing a firearm. The armed-violence count alleged that defendant, "while armed with a dangerous weapon, a handgun, *** committed a felony *** to wit: Theft, in that said defendant possessed a stolen Polaris ATV[.]"

¶ 5        At the arraignment hearing on September 5, 2023, the court stated:

> "Mr. Peters, they indicted you -they being the grand jury of Will County. They've indicted you on multiple counts, including an armed violence count, which [is] 6 to 30 years in the Illinois Department of Corrections, no kind of probation or conditional discharge allowed, if you're found guilty of that, okay?"

The court then appointed counsel to represent defendant and discussions ensued regarding discovery deadlines.

¶ 6        Defendant interjected and stated, "I want to go *pro se*." The following conversation subsequently occurred:

> "DEFENDANT: Your Honor, speedy trial.
>
> THE COURT: You'll get your speedy trial.

2

Here's what I want to do, I'm gonna give Mr. Peters his bill of indictment. We'll have him back up tomorrow. Let him read through that. And then I'll have him back up here tomorrow. I'm gonna explain to you everything, and we'll go from there, okay?

DEFENDANT: All right."

¶ 7 The next day, the arraignment judge read the indictment to defendant, discussing the nature of each charge and the potential sentencing ranges. The court informed defendant that the armed-violence charge was the most significant count in the indictment and emphasized:

"It's a Class X felony which means its technically punishable by six to 30 years in the Illinois Department of Corrections, up to 60 if you were extended term eligible, and you would not be able to be sentenced to a period of probation or conditional discharge as it relates to that count if you were found guilty."

After reading the additional counts, the court asked defendant if he understood the charges against him as well as the penalties involved, and defendant responded, "Yeah, I understand."

¶ 8 During the same hearing, the court noted that defendant requested to proceed as a self-represented litigant and asked the following questions:

"THE COURT: Okay. You also said you wanted to represent yourself so let me ask you a couple of questions about that. How far did you go in school?

DEFENDANT: Some college.

THE COURT: All right. Have you ever been treated for any sort of mental health issue?

DEFENDANT: No.

THE COURT: Are you able to read and write the English language?

DEFENDANT: Yes.

3

THE COURT: All right. With that being said, you understand that you have an absolute right to represent yourself, but you also have an absolute right to be appointed counsel if you can't afford one? Do you understand that?

DEFENDANT: Yes.

THE COURT: At this point in time you want to represent yourself?

DEFENDANT: That is a speedy [*sic*], right?

THE COURT: Well, you do have a speedy trial demand. That has nothing to do necessarily with you being represented.

DEFENDANT: I know. I'm just saying it is though.

THE COURT: Yeah. Right now because I'm going to assign this and I'm going to assign you out tomorrow to the courtroom that I'm assigning it to. Okay?

DEFENDANT: All right. ***."

The court then assigned the case to the criminal docket for trial.

¶ 9        Five days later, at the initial hearing in the assigned courtroom, the trial court acknowledged that defendant was self-represented and asked if defendant "ha[d] been admonished or not?" The prosecutor stated that defendant had been previously admonished. He also informed the court that defendant did not have discovery yet:

"THE COURT: Okay. No discovery, but you want your trial. Okay. But you don't know enough information to determine and make a reasonable demand for trial, and, if we go, you leave it up to the State to bring in just about anything; is that what you wish to do at this time, Mr. Peters?

DEFENDANT: Yes, your Honor. I demand a speedy trial."

¶ 10    At the next hearing on September 21, 2023, defendant repeated his speedy trial request by filing a written demand for a "fast and speedy jury trial." The trial court acknowledge defendant's motion and informed defendant that the time for his speedy trial demand was 120 days. The State then tendered discovery to defendant and requested additional time to produce the officers' body camera videos.

¶ 11    On October 18, 2023, the court initiated the hearing by stating that defendant was present as a self-represented litigant, having been admonished and "waiving his right to counsel in the past." Defendant requested another court date to present a motion, and the court informed him "if you do, then what you are doing is you are tolling your speedy trial." Defendant indicated he wanted a motion date before his trial date, without tolling his speedy-trial date, and asked if the jury trial was set for November 13. The court confirmed that the trial had been scheduled for that date. When defendant asked if the trial date included "selection and everything," the court stated: "Yeah. We're going to do it all. I don't think you are prepared to do this, sir. But you chose to go *pro se*, or what we call self-represented litigant. And you chose a speedy trial I think at the very beginning." Defendant acknowledged the court's comments and stated that he needed another court date before trial to present a motion. The court scheduled a hearing for October 25.

¶ 12    On October 25, defendant presented a written motion *in limine*, seeking to bar the State from referring to his silence during police questioning. The court reserved ruling on the motion, stating "I don't know if that's even going to come up [at trial.]" Defendant accepted the court's decision and indicated he was ready to proceed to trial.

¶ 13    At the final pre-trial hearing on November 9, the State informed the court that an offer had been made to defendant and that defendant rejected it. The State also made a final discovery tender

of several still-framed videos clips and pictures. The court then cautioned defendant to carefully consider his decision to waive counsel, stating:

"I understand you want this over with. I get this. But usually trained, licensed attorneys will make sure they have all the discovery, done all the investigations that need to be done. But this is what you want. And so they had to give it to you in a certain period of time."

Defendant acknowledged the court's comments and indicated he was still ready for trial.

¶ 14        Jury selection occurred on Monday, November 13, 2023. The next day, before the jurors entered the courtroom, the following discussion occurred:

MR. FLESZEWSKI [(ASSISTANT STATE'S ATTORNEY)]: Judge, just one thing. Just for the record, I just want to make sure that the defendant knows that with this armed violence because it's a firearm there is an enhancement of 15 years, not 6 years."

THE COURT: All right. Well, he's still representing himself at this stage. That's 15 years because it's a firearm Not 6 to 30. But minimum of—and it is non[-]probationable [*sic*]—15 years. All right."

MR. FLESZEWSKI: I just want to make sure. He was *pro se* from the beginning so when he was arraigned, but I know when we had spoken that this was 15 and not 6.

THE COURT: You still wish to represent yourself?

DEFENDANT: Yes ma'am.

THE COURT: Okay. Under these circumstances, you can't change your mind because now I have to admonish you to the right range. That I was giving you this opportunity if you wanted counsel. And I would have excused this jury, and we would have set another date within the speedy trial term. Are you absolutely sure that you still want to represent yourself?"

DEFENDANT: Yes.

THE COURT: Okay. All right. Bring in the jurors."

¶ 15     During opening statements, defendant stated:

"The word theft is the unlawful taking or obtaining of personal property from the person or in the presence of another against his will by means of actual or threatening force or violence or failed injury immediate or future to each person or property."

The prosecutor objected, claiming defendant misstated the law, and the trial court overruled the objection.

¶ 16     At trial, evidence revealed that Phillip Cowger owned a Polaris ATV. On August 11, 2023, he received a text from a family member telling him that the overhead door on his shed was open. When he investigated the area around the shed, he noticed the service door had glass knocked out of it and his ATV was missing. Cowger's neighbor, Michael Schubbe, testified that he drove past Cowger's house on the morning of August 11 and notice a man wearing a hat and a mask, who he did not recognize, sitting in the ATV at the end of Cowger's driveway. As he passed the driveway, the ATV entered the road. Schubbe pursued the vehicle and called 9-1-1.

¶ 17     Officer Thomas Coffey reported to the scene after patrol officers pulled defendant over. He identified defendant at the man sitting in the driver's seat of the ATV. Coffey patted down defendant and found a handgun with one round inside. The gun had a scratch on it where the serial number should have been. Cowger arrived at the scene and identified the vehicle defendant had been driving as his missing ATV.

¶ 18     During trial, defendant cross-examined three of the six witnesses. He asked each witness one or two questions. While cross-examining Officer Coffey, defendant made a few irrelevant inquiries and then withdrew his line of questioning.

7

¶ 19    The jury found defendant guilty of armed violence, UPWF, defacing identification marks on a firearm, and theft but found him not guilty of burglary. The trial court sentenced defendant to 15 years' imprisonment on the count of armed violence and 3 years' imprisonment on the remaining counts, to run concurrently to the armed-violence sentence.

¶ 20                                    II. ANALYSIS

¶ 21                                 A. Waiver of Counsel

¶ 22    On appeal, defendant argues that his waiver of counsel was not knowingly and voluntarily made because the court failed to properly admonish him pursuant to Rule 401(a) regarding the minimum sentence for armed violence and the error was "exacerbated by other deficiencies" in the court's admonishments.

¶ 23    Initially, defendant acknowledges that he failed to preserve the error by objecting to the circuit court's insufficient admonishments or by raising the issue in a posttrial motion. Nevertheless, he claims the error can be reviewed as second-prong plain error. The State disagrees and maintains that defendant's claim is reviewable only if he satisfies the requirements of the first prong of the plain error doctrine, citing our supreme court's recent decision in *People v. Ratliff*, 2024 IL 129356.

¶ 24    In *Ratliff*, the Illinois Supreme Court held that a Rule 401(a) violation is not cognizable as second-prong plain error:

> "The question in this case becomes clear: Is a Rule 401(a) violation akin to structural error, so it may be reviewed as second-prong plain error, or is it akin to trial error, so it is subject to harmless error analysis and may be reviewed only as first-prong plain error? The answer, decidedly, is the latter." *Id.* ¶ 43.

8

Thus, following *Ratliff*, we are confined to the first prong of the plain error doctrine in determining whether reversible error occurred here.

¶ 25      Unlike the second prong of plain error, the first prong involves a prejudice-focused, harmless error analysis. See *People v. Reese*, 2017 IL 120011, ¶¶ 63-65. Reviewing courts will only consider a forfeited error on appeal if "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error." *Id.* ¶ 60. Before applying either prong, however, "it is appropriate to first determine whether a clear or obvious error occurred." *Id.*

¶ 26      Criminal defendants in Illinois have a constitutional right to the effective assistance of counsel in all criminal cases, which attaches at every critical stage of proceedings. *People v. Vernón*, 396 Ill. App. 3d 145, 153 (2009). The right to counsel includes the right to self-representation. *People v. Hickey*, 204 Ill. 2d 585, 629-30 (2001). An accused may waive his right to counsel and choose to represent himself as long as the waiver is knowing, intelligent, and voluntary. *People v. Haynes*, 174 Ill. 2d 204, 235 (1996).

¶ 27      In Illinois, the procedure for waiving counsel is governed by Supreme Court Rule 401(a) (eff. July 1, 1984). Rule 401(a) requires the court to inform a defendant of "(1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law ***; and (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court," before accepting defendant's waiver of counsel. *Haynes*, 174 Ill. 2d at 236. The admonishments must be provided "at the time the court learns that a defendant chooses to waive counsel, so that the defendant can consider the ramifications of such a decision." *People v. Jiles*, 364 Ill. App. 3d 320, 329 (2006); see also People v. Langley, 226 Ill. App. 3d 742, 749-50 (1992).

¶ 28    Although preferred (*Langley*, 226 Ill. App. 3d at 749), strict compliance with Rule 401(a) is not always required (*People v. Wright*, 2017 IL 119561, ¶ 41). Substantial compliance is sufficient if the record demonstrates that (1) defendant waived his right to counsel knowingly and voluntarily, and (2) the admonishment given did not prejudice the defendant's rights. *Wright*, 2017 IL 119560, ¶ 41. Courts must assess each waiver on its own facts. *Haynes*, 174 Ill. 2d at 242.

¶ 29    Imperfect or incomplete admonishments regarding the potential sentencing range may still comply with the rule if the record otherwise demonstrates a knowing and intelligent waiver. See *Wright*, 2017 IL 119561, ¶¶ 51, 55 (substantial compliance found despite errors in admonitions concerning the potential sentence because record established that defendant's decision to waive counsel was made freely, knowingly, and intelligently); *Haynes*, 174 Ill. 2d at 237-40 (waiver of counsel effective where incorrect sentencing admonishment substantially complied with Rule 401(a)); *People v. Coleman*, 129 Ill. 2d 321, 333-34 (1989) (waiver of counsel was made knowingly and intelligently even though trial court incorrectly admonished defendant that minimum sentence for murder was 20 years in prison rather than natural life); *People v. Johnson*, 119 Ill. 2d 119, 131-32 (1987) (waiver of counsel valid despite trial court's failure to advise defendant that he faced a mandatory minimum sentence of life imprisonment). Moreover, deficient admonishments do not result in prejudice if "the defendant already knows of the omitted information or because the defendant's degree of legal sophistication makes evident his or her awareness of the omitted information." *People v. Moore*, 2014 IL App (1st) 112592, ¶ 38.

¶ 30    Here, defendant asserted his desire to waive counsel at the arraignment hearing. The court immediately furnished defendant with a copy of the indictment and scheduled a hearing for the following day. At that hearing, the court read aloud the bill of indictment, informing defendant of the nature of each charge against him and the corresponding sentencing ranges, and informed him

of his right to counsel if he could not afford an attorney. Defendant acknowledged that he understood the charges against him and his right to counsel and stated that he wished to represent himself. The court asked defendant if he wished to represent himself on several occasions at subsequent hearings and defendant remained steadfast in his decision to proceed as a self-represented litigant.

¶ 31    We recognize that the trial court initially provided a deficient admonishment regarding the minimum potential sentence for armed violence. However, this incorrect statement does not mean the court failed to comply with Rule 401(a). Substantial compliance is sufficient if the record demonstrates a knowing and intelligent waiver. See *Wright*, 2017 IL 119561, ¶¶ 52-56. In this case, the court provided the correct minimum and maximum sentencing range for armed violence before the jury was empaneled and inquired whether, given the potential for an enhanced sentence, defendant wished to waive his right to counsel. Defendant acknowledged that he understood the corresponding penalty and affirmed that he was prepared for trial and wished to represent himself.

¶ 32    Moreover, a review of the whole record leads us to conclude that defendant's decision to waive counsel was made freely, knowingly, and intelligently. Prior to accepting defendant waiver of counsel, the court asked defendant several questions and ascertained that he attended college, had never been treated for mental health issues, could read and understand the English language, and understood his right to counsel. During the pretrial proceedings, defendant moved for a speedy trial, maintained his right to a speedy trial, and filed a written motion *in limine* seeking to bar certain testimony. At trial, defendant cross-examined witnesses and participated fully in the proceedings. Defendant claims it was unclear that he understood the nature of the charges against him at trial because he improperly defined the term theft in opening statements. However, the record demonstrates that he was fully apprised of the charges against him from the initial

arraignment hearing to trial. When a defendant elects to proceed as a self-represented litigant, he is responsible for his own representation and held to the same standard as an attorney. See *People v. Allen,* 401 Ill. App. 3d 840, 854 (2010) ("Defendant was admonished about the consequences of proceeding *pro se* and that he would be required to perform as an attorney would and the court could not provide any legal assistance to him.").

¶ 33　　　　Defendant claims that the circuit court's question, "you understand that you have an absolute right to represent yourself, but you also have an absolute right to be appointed counsel if you can't afford one" was not enough to assist the court in determining that defendant understood he a right to counsel, citing *People v. Stewart*, 2023 IL App (1st) 210912, ¶¶ 42-43. However, *Stewart* is readily distinguishable. There, the court admonished the defendant that "[t]he Public Defender's Office is appointed to represent defendants who cannot afford a lawyer" and "the Public Defender's Officer has the ability and power to decide who gets assigned to which cases, I don't." *Id.* ¶ 42. That was the only admonishment given. The appellate court concluded that the statement failed to substantially comply with Rule 401(a) where no admonishments were given whatsoever, stating that "[w]e cannot turn a blind eye to the fact that informing defendant that appointed counsel is available to present him is a far cry from informing him that he has a constitutional *right* to counsel and a constitutional *right* to appointed counsel if indigent." (Emphasis in original.) *Id.* ¶ 43. By contrast, the court, here, informed defendant that he had an unequivocal right to counsel by emphasizing that defendant had an "*absolute* right" to appointed counsel. In addition, and arguably more important, the court admonished defendant pursuant to other Rule 401(a) requirements.

¶ 34　　　　Under the circumstances, we find the Illinois Supreme Court's decision in *Wright* controlling. In *Wright*, as in this case, the trial court misinformed the defendant as to the

12

appropriate sentencing range. See *Wright*, 2017 IL 119561, ¶¶ 51-56. At the arraignment hearing, the defendant asserted that he would not agree to continuances and the public defender moved to withdraw. *Id.* at ¶ 48. During the next status hearing, the defendant informed the court that he wished to proceed without counsel and was " 'not giving up [his] right to speedy trial at all.' " *Id.* The court then admonished the defendant and incorrectly informed him that the maximum penalty he faced was 60 years in prison rather than 7 years. *Id.* ¶ 49. Our supreme court concluded that the defendant's decision to waive counsel was made freely, knowingly, and intelligently because the record demonstrated that he attended two years of college, previously represented himself in a felony case, expressed a desire to represent himself from the beginning, and reiterated that desire on multiple occasions after being informed by the court of the potential pitfalls of doing so. *Id.* ¶ 55. The court further emphasized that defendant failed to demonstrate prejudice based on the trial court's misstatement of the maximum sentence because the only basis defendant gave for his decision to proceed as a self-represented litigant was his speedy trial concerns:

> "[T]there is no basis for us to conclude that defendant was prejudiced by the trial court's understatement of the potential maximum sentence. Defendant does not even make a bare allegation that he would not have proceeded to represent himself if he had known the possible maximum sentence he faced for armed robbery was actually 75 years, rather than 60 years." *Id*. at ¶ 56.

¶ 35     The facts before us are even more compelling. Here, the arraignment judge admonished defendant and ascertained that defendant attended college, understood the charges against him, and was aware of his right to counsel. Moreover, defendant repeatedly asserted that his basis for self-representation was his desire for a speedy trial. However, unlike *Wright*, once the trial judge realized that defendant had been misinformed as to the potential sentencing range for armed

13

violence, she immediately admonished defendant as to the appropriate minimum sentence. The court re-admonished defendant as to the correct sentencing range before open statements and provided defendant with the option of dismissing the jury and continuing the cause to obtain counsel. Defendant rejected the offer, electing instead to proceed to trial.

¶ 36     Further, after the arraignment judge admonished defendant under Rule 401(a), defendant asserted his speedy-trial rights. He then continued to assert those rights before the trial judge. Although the court expressed concern that defendant was choosing to go to trial without the aid of counsel, defendant maintained his desire for a speedy trial as a self-represented litigant. Thus, the record indicates defendant was motivated by a specific, legitimate reason for waiving his right to counsel regardless of the minimum sentencing range. Defendant therefore failed to demonstrate that he was prejudiced by the court's misstatement of the potential minimum sentence. Further, we decline to consider defendant's suggestion that he would not have proceeded to represent himself if he had known the actual minimum sentence based on terms of a plea offer that are not part of the record. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (any doubts that arise from the incompleteness of the record on appeal will be resolved against the appellant).

¶ 37     In reaching this decision, we reiterate our supreme court's sentiments: "We do not diminish the importance of correct admonishments as to the actual *** sentence allowed. Each case, however, must be evaluated on its own particular set of facts." *Wright*, 2017 IL 119561, ¶ 54. Here, based on conversations between the trial judge and defendant at several pretrial hearings, we conclude the circuit court substantially complied with Rule 401(a) and defendant made a knowing and voluntary waiver of his right to counsel. Accordingly, defendant has not established "a clear or obvious error" required for relief under the plain error doctrine. See *Reese*, 2017 IL 120011, ¶¶ 60, 65.

14

¶ 38                                    B. Constitutionality of UPWF

¶ 39         Next, defendant contends that section 24-1.1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.1(a) (West 2022)) violates the second amendment of the United States Constitution and article I, section 22, of the Illinois Constitution under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022).

¶ 40         The second amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. This fundamental right, however, has limitations. *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). In *Bruen*, the United States Supreme Court established a two-step analysis for determining the constitutionality of a statute regulating firearms. *Bruen*, 597 U.S. at 26-27, 142 S. Ct. 2111. As we recently observed in *Sinnissippi Rod & Gun Club*, *Inc. v. Raoul*, 2024 IL App (3d) 210073, under *Bruen*'s framework:

> "The first inquiry is: Does the plain text of the second amendment cover an individual's conduct? [Citation.] If not, the regulation is constitutional because it falls outside the scope of protection. But if it does, the individual's conduct is presumptively protected by the second amendment, and we move to the second inquiry: Is the State's regulation 'consistent with the Nation's historical tradition of firearm regulation[?]' " *Id.* ¶ 13 (quoting *Bruen*, 597 U.S. at 24).

¶ 41         In *People v Travis*, 2024 IL App (3d) 230113, pet. for leave to appeal pending, No. 130696 (filed May 16, 2024), this court upheld the constitutionality of section 24.1-1(a) of the Code (otherwise known as the UUWF/UPWF statute[1]) utilizing the historical analogue test established

---

[1] As this court recently noted in *People v. Morales*, 2024 IL App (3d) 230433-U, ¶ 12, the full title of section 24-1.1 is "Unlawful use or possession of weapons by felons or persons in custody of the Department of Corrections."

in *Bruen*. *Id.* ¶ 24. In that case, we applied the *Bruen* two-prong analysis to the felon-based scheme and determined that: (1) felons are members of "the people" under the plain text of the second amendment; and (2) the disarmament of felons under the challenged statutes is consistent with the nation's longstanding history and tradition of comparable regulations prohibiting criminals and dangerous individuals from possessing firearms. *Id.* ¶¶ 25, 33. We agree with that analysis. Accordingly, we adhere to *Travis* and hold that section 24-1.1(a) of the Code is constitutional under both the United States and Illinois Constitutions.[2]

¶ 42   During the pendency of this appeal, the United States Supreme Court issued a decision in *United States v. Rahimi*, 602 U.S. \_\_\_, 144 S. Ct. 1889 (2024), upholding a federal statute that prohibited certain individuals subject to a domestic violence restraining order from possessing a firearm. After reviewing *Rahimi* and the parties' arguments, we determine that decision does not change the above analysis. See *id.* slip op. at 11 (rejecting the government's argument that a citizen "may be disarmed simply because he is not 'responsible' ").

¶ 43                              C. One-Act, One-Crime Violation

¶ 44   Finally, defendant asserts that his theft conviction violates the one-act, one-crime doctrine. The State notes defendant forfeited this issue but nevertheless concedes plain error. See *People v. Coats*, 2018 IL 121926, ¶ 10 (one-act, one-crime violations are reviewable under the second-prong of the plain-error doctrine).

---

[2] In his reply brief, defendant claims that if we conclude, as we did in *Travis*, that the second amendment does not exclude felons from its protections, he "no longer has to rely on the Illinois Constitution for its greater constitutional protections." Having determined that defendant is part of "the people" as that term is used in the second amendment, defendant's argument that the UPWF statute violates the Illinois Constitution based on his felon status no longer holds merit. See *Travis*, 2024 IL App (3d) 230113, ¶¶ 34-37. We therefore accept defendant's concession and decline to consider his as-applied argument.

¶ 45    The one-act, one-crime doctrine prohibits multiple convictions based on a single physical act. *People v. West*, 2017 IL App (1st) 143632, ¶ 24. When two or more convictions are based on a single act, the sentence imposed for the less serious offense should be vacated. *Id.* To determine which offense is more serious, courts generally compare the relative punishments prescribed by the legislature. *People v. Artis*, 232 Ill. 2d 156, 170 (2009).

¶ 46    Here, defendant's act of possessing a stolen Polaris ATV while armed with a handgun resulted in two convictions—armed violence and theft. As the State concedes, the two convictions stem from a single physical act of defendant's possession of the ATV. Armed violence with a handgun is a Class X felony (720 ILCS 5/33A-2(a), 33A-3(a) (West 2022)), while theft is a Class 3 felony (*id.* § 16-1(a)(1)(A), (b)(4)). Defendant's conviction for armed violence is therefore the more serious offense. Accordingly, we vacate defendant's conviction for theft.

¶ 47                               III. CONCLUSION

¶ 48    For the foregoing reasons, we vacate defendant's theft conviction and otherwise affirm the judgment of the circuit court of Will County.

¶ 49    Affirmed in part and vacated in part.

17