2025 IL App (1st) 232365
No. 1-23-2365
Opinion filed March 28, 2025

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 13 CR 9408 |
| | ) | |
| FRANK BUSCHAUER, | ) | The Honorable Marc W. Martin, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Tailor and Justice Gamrath concurred in the judgment and opinion.

**OPINION**

¶ 1    Frank Buschauer has filed a postconviction petition raising three issues: (i) inadequate jury waiver admonitions undermined his constitutional guarantee to trial by jury (Ill. Const. 1970, art. I, § 8), (ii) the trial record was "barren" of any plea discussion history, and (iii) both the trial court and an earlier appellate court opinion misinterpreted *People v. Rudd*, 2020 IL App (1st) 182037.

¶ 2    In 2019, Buschauer was tried and convicted of the first degree murder of his wife 19 years earlier and sentenced to 25 years in the Department of Corrections. Before trial, this court reviewed the trial court's suppression of statements and other evidence, ruling that statements made to police during their investigation in 2000 were admissible, along with letters and other documents obtained

during a search of the couple's house. See *People v. Buschauer*, 2016 IL App (1st) 142766 (*Buschauer I*).

¶ 3       In 2022, on direct appeal, this court affirmed Buschauer's conviction. *People v. Buschauer*, 2022 IL App (1st) 192472 (*Buschauer II*). We found the trial court correctly admitted Buschauer's 2013 statements to police because the officers' decision to withhold information about Buschauer's arrest warrant did not affect the validity of his *Miranda* waiver or make the circumstances of the 2013 interrogation fundamentally unfair. See *Miranda v. Arizona*, 384 U.S. 436 (1966). We also found admissible, as primarily nonhearsay and nontestimonial, his deceased wife's statements to her friends who testified at trial.

¶ 4       The trial court summarily dismissed Buschauer's postconviction petition at the first stage of proceedings.

¶ 5       We affirm. Buschauer's jury waiver was proper, the record demonstrates no plea offer was made, and our holding in *Buschauer II* relying on *Rudd* is *res judicata*. See *Rudd*, 2020 IL App (1st) 182037, ¶ 77 (when defendant receives *Miranda* warnings including right to counsel during interrogation "and agrees to waive those rights, that typically serves to waive any sixth amendment right to counsel as well" (internal quotation marks omitted)).

¶ 6                                   Background

¶ 7       In early 2000, Buschauer called 911 after finding his wife, Cynthia Hrisco, unresponsive in their bathtub. The investigation included hours of questioning Buschauer but stalled months later. The South Barrington police department reopened the case in 2010. By this time, Buschauer and his son lived in Lake Geneva, Wisconsin. In April 2013, after an "ongoing death investigation," South Barrington police obtained an arrest warrant for Buschauer. When they located Buschauer, they requested he accompany them to a local police station for an interview rather than arrest him.

Buschauer complied, received *Miranda* warnings, and spoke with detectives for hours before invoking his right to counsel. See *Miranda*, 384 U.S. 436. The State eventually charged Buschauer with first degree murder, and after a bench trial, the court found him guilty and sentenced him to 25 years' imprisonment.

¶ 8        On direct appeal, Buschauer raised constitutional challenges to his conviction under both the United States and Illinois Constitutions, arguing that the trial court should have barred his 2013 statements. He also raised evidentiary and constitutional claims to testimony from three of Hrisco's friends, who provided statements she made to them.

¶ 9        This court affirmed in *Buschauer II*, determining that the trial court properly admitted Buschauer's 2013 statements. The officers' decision to withhold information about the arrest warrant did not invalidate Buschauer's *Miranda* waiver or render the 2013 interrogation fundamentally unfair. We concluded that Hrisco's statements to her friends were primarily nonhearsay and nontestimonial and that the trial court committed no evidentiary or constitutional errors in admitting them.

¶ 10       In August 2023, Buschauer's retained counsel, Allan Ackerman, filed a postconviction petition which the postconviction court dismissed summarily. Ackerman had represented Buschauer throughout his legal troubles, including in *Buschauer I* and *II*.

¶ 11                                *Pretrial Motions*

¶ 12       In anticipation of trial, Buschauer moved to suppress statements he made to the Illinois State Police on March 6, 2000; letters and other evidence seized from his home on March 6, 2000; and statements he made during the April 2013 police interview. The trial court granted his motion to suppress the March 2000 statements and evidence but admitted the 2013 statements. The State

appealed the ruling on the 2000 statements and evidence. We reversed and remanded. See *Buschauer I*, 2016 IL App (1st) 142766, ¶¶ 40, 47.

¶ 13    As the matter advanced to trial, Buschauer moved to exclude statements Hrisco made to three friends about Buschauer and statements those friends made to police officers concerning Buschauer's behavior toward her. Buschauer contended the statements were inadmissible hearsay. The trial court ruled that it would admit the statements at trial only for showing motive.

¶ 14    On May 16, 2019, two weeks before trial, Buschauer's counsel alerted the trial court of his client's intention to waive his right to a jury trial. The totality of the trial court's jury waiver dialogue with Buschauer:

"THE COURT: All right. Other than that, any other issues?

MR. ACKERMAN: I think, in fairness to the Court, the defendant should execute a jury waiver this afternoon, and that way—

THE COURT: Okay. If you want to, that's fine.

MR. ACKERMAN: Okay.

THE COURT: You want to do that now?

MR. ACKERMAN: Do you have those forms?

THE COURT: I think Mr. Weiner is grabbing one for you.

MR. ACKERMAN: If the Court please, in open court, the defendant has executed a jury waiver, which the top of it has not been completed. And I'll tender it to the Court. And if you would care to admonish the defendant, he's here.

THE COURT: All right. I'm just going to fill in this top part for you. All right. Mr. Buschauer, your attorney has indicated that you wish to have a bench trial and not have a jury trial in this matter; is that correct?

THE DEFENDANT: That is correct.

THE COURT: I'm holding in my hand a document entitled a jury waiver. Did your attorney explain to you what a jury trial is?

THE DEFENDANT: Yes, he did.

COURT: Did he explain to you that by signing this document, you give up your right to a jury trial in this case?

THE DEFENDANT: Yes.

THE COURT: Is that your signature on the bottom?

THE DEFENDANT: Yes.

THE COURT: And you do not wish to have a jury trial; is that correct?

THE DEFENDANT: That is correct.

THE COURT: All right. The jury waiver will be accepted."

¶ 15    On the morning of May 30, 2019, before opening statements, the trial court directed all counsel to state their names for the record. Regarding Buschauer's earlier jury waiver, the record reflects:

"THE COURT: All right. Matter is up today for trial. On May 16th, 2019, Mr. Buschauer executed a jury waiver and we went through the admonishments. That's still your intention, Mr. Buschauer?

THE DEFENDANT: Yes."

¶ 16    Also that morning, the court inquired with all counsel and Buschauer present:

"THE COURT: State, were there any offers made in this matter?

[ASSISTANT STATE'S ATTORNEY]: No, your Honor.

THE COURT: All right. So, there's no need to give a *Curry* admonishment."

¶ 17     The trial followed, after which the court found Buschauer guilty and imposed sentence. Buschauer appealed, and this court affirmed in *Buschauer II.*

¶ 18                                   *Postconviction Petition*

¶ 19     Buschauer filed a postconviction petition, arguing that inadequate jury waiver admonitions undermined his constitutional guarantee to trial by jury (Ill. Const 1970, art. I, § 8). He also complained that the trial record was "barren" of a plea discussion history and that both the trial and appellate courts misinterpreted *Rudd*, 2020 IL App (1st) 182037.

¶ 20     On November 17, 2023, the postconviction court summarily dismissed Buschauer's petition in a written order. The court found that Buschauer's challenge to the adequacy of the trial court's oral jury waiver admonishments was forfeited because it could have been raised on direct appeal, and the doctrine of *res judicata* barred his contention about *Rudd.* Finally, regarding plea negotiations, the court found the claim had no basis in the record, and under *Strickland v. Washington*, 466 U.S. 668 (1984), Buschauer's allegations of ineffectiveness of counsel are unfounded.

¶ 21                                        Analysis

¶ 22                                   *Conflict of Interest*

¶ 23     Along with trial co-counsel, Ackerman represented Buschauer during the State's interlocutory appeal of the order granting the defense motion to suppress statements and evidence obtained in 2000. When the matter finally went to trial in 2019, Ackerman represented Buschauer during the trial, sentencing, and direct appeal. Ackerman prepared and submitted Buschauer's verified postconviction petition, having been appointed to represent him in postconviction proceedings. Ackerman once again represents Buschauer in this appeal.

¶ 24        By representing Buschauer at trial, on appeal, in postconviction proceedings, and in this appeal, Ackerman presents this court with a threshold question of whether his current representation constitutes a conflict of interest. We note that the State did not address this issue in its brief.

¶ 25        In the opening brief, Ackerman states,

"Undersigned counsel believes he has and will continue to zealously represent the best interests of petitioner in the postconviction proceedings at hand. Undersigned counsel appears as appellate counsel with permission of the court having substituted for OSAD [in] April 2024. Undersigned counsel understands that in the event this Court finds it is in the best interest of petitioner and the criminal justice system that he be replaced as petitioner's appellate counsel, then, of course, he will do so."

¶ 26        Ackerman also assures us that he "has and will continue to zealously represent the best interests of petitioner in the postconviction proceedings at hand" and "understands that in the event this Court finds it is in the best interest of petitioner and the criminal justice system that he be replaced as petitioner's appellate counsel then, of course, he will do so." See *People v. Brown*, 2017 IL App (3d) 140921, ¶ 34 (attorney has duty to "zealously" argue ineffective assistance of counsel notwithstanding it was his own ineffectiveness he was arguing); *People v. Easley*, 192 Ill. 2d 307, 329 (2000) (not incompetence of counsel to refrain from meritless issues "unless counsel's appraisal of the merits is patently wrong").

¶ 27        This court has no reason to doubt that counsel acts zealously and with his client's best interests as his highest priority. Ackerman has been a member of the Illinois Bar for more than 60 years and is recognized as a respected criminal defense attorney among peers in the legal community.

¶ 28        We turn to Buschauer's substantive arguments.

¶ 29                                    *Jury Waiver*

¶ 30        Buschauer contests the summary dismissal of his postconviction petition at the first stage

of proceedings. His first argument asserts that the jury waiver was "the product of the trial court's

abridged jury waiver admonitions." In response, the State maintains appellate counsel cannot have

been ineffective for failing to raise the abridged jury waiver admonisitions on direct appeal because

Buschauer forfeited his challenge to his jury waiver and, even if not forfeited, it is frivolous and

patently without merit.

¶ 31        The exchange on the jury waiver began with Buschauer's attorney stating, "I think, in

fairness to the Court, the defendant should execute a jury waiver this afternoon." The trial court

responded, "Okay. If you want to, that's fine." Defense counsel continued: "[I]n open court, the

defendant has executed a jury waiver." That defense counsel initiated the court's addressing of the

waiver of Buschauer's right to a jury suggests an absence of pressure, especially considering the

court's question to Buschauer: "Mr. Buschauer, your attorney has indicated that you wish to have

a bench trial and not have a jury trial in this matter; is that correct?" The court further asked: "I'm

holding in my hand a document entitled a jury waiver. Did your attorney explain to you what a jury

trial is?" and "Did he explain to you that by signing this document, you give up your right to a jury

trial in this case?" Finally, the trial court asked, "Is that your signature on the bottom?" After

Buschauer answered each question in the affirmative, the trial court finished: "And you do not wish

to have a jury trial; is that correct?" Only after this exchange did the trial court accept Buschauer's

jury waiver.

¶ 32        Caselaw is consistent that no set of specific admonishments exists that the trial court must

provide before accepting a waiver. "[E]ach case turns on its own facts and circumstances" and "no

precise formula for determining whether a defendant knowingly and understandingly waived the

right to a jury trial." *People v. Brown*, 2023 IL App (4th) 220399, ¶ 35. This court has held that formulaic questioning was not required because the defendant's answers to the court's questions demonstrated that the defendant was aware of his right to a jury trial and that, by waiving the right, a judge would decide the case. *People v. Parker*, 2016 IL App (1st) 141597, ¶ 50.

¶ 33    In *Parker*, the defendant claimed the trial court erred by accepting his jury waiver without ensuring the defendant did so knowingly, intelligently, and voluntarily. *Id.* ¶ 44. The record reflected that the defense attorney requested a bench trial and that, before trial, the court stated: " 'I need the charging document. *** Now, I need a Jury waiver, if that has not been previously done.' " *Id.* ¶ 5. The court then asked the defendant if he had signed the jury waiver, telling him " '[b]y signing that you give up the right to have a trial by Jury.' " *Id.* The trial court asked whether the defendant knew what a jury trial was, to which he responded, " 'Yes.' " *Id.*

¶ 34    If anything, the simple questions in *Parker* found to be constitutionally sound were far less explanatory about jury waiver than the colloquy here. The trial court asked the defendant whether he knew what a jury trial is and whether he knew that, by signing a waiver, he was giving up the right to a jury trial. The only other question was whether it was the defendant's signature on the waiver.

¶ 35    Although not dispositive, a written waiver provides evidence of a knowing relinquishment of the right to a jury trial. *People v. Gatlin*, 2017 IL App (1st) 143644, ¶ 14. A reviewing court will, however, deem a written waiver insufficient if the record shows no discussion whatsoever in the defendant's presence. *People v. Scott*, 186 Ill. 2d 283, 285 (1999). Conversely, if the defendant does not execute a written waiver, they still may validly waive through a colloquy on the record. *People v. Tooles*, 177 Ill. 2d 462, 464 (1997). One factor that provides evidence of a knowing

waiver is the defendant's silence when defense counsel requests a bench trial. *People v. Reed*, 2016 IL App (1st) 140498, ¶ 7.

¶ 36    In *Reed*, as here, the defendant argued the trial court had failed to ensure his jury waiver was knowing and voluntary, asserting "the court did not question him on his understanding of that right or the ramifications of waiving it" or "advise him of the nature of a jury trial, the difference between a bench and a jury trial, or that a judge would decide the facts rather than a jury." *Id.* ¶ 4. The *Reed* court rejected the argument, concluding that the facts and circumstances supported the trial court's finding that the jury waiver was knowingly and voluntary. *Id.* ¶ 8.

¶ 37    Specifically, the *Reed* court held that these facts and circumstances supported the trial court's finding: (i) defense counsel requested a bench trial in the defendant's presence, and the defendant did not object or ask questions; (ii) defendant submitted a signed waiver and the court asked if he had signed the waiver; (iii) the court asked the defendant if he had been threatened or promised anything in exchange for waiving his right or whether the waiver was voluntary; and (iv) defendant's criminal history of multiple felony and misdemeanor convictions indicated "a familiarity with the criminal justice system, and a familiarity with his right to a trial by jury." *Id.*

¶ 38    Here, Buschauer was present when Ackerman requested a bench trial. The trial court asked Buschauer directly whether he wanted a bench trial. Ackerman requested the trial court admonish Buschauer in open court. And Buschauer signed the jury waiver form. Under these circumstances, we find Buschauer voluntarily, intelligently, and knowingly waived his right to a jury trial.

¶ 39    Regarding the last factor, Buschauer emphasizes his lack of a criminal record. But at the time of the murder, Buschauer was 64 years old with no apparent cognitive difficulty and had retired from a career in chemical engineering. Nothing in the record indicates a lack of familiarity with our

justice system and his constitutional rights, particularly considering his substantial education. Furthermore, we have carefully reviewed the exchange in open court. See *supra* ¶ 14.

¶ 40 Finally, without error, there can be no plain error to overcome forfeiture. Whether a right to a jury trial has been violated may be considered under the plain error doctrine. *People v. Hutt*, 2023 IL 128170, ¶ 28. The defendant bears the burden of persuasion to show (i) a clear or obvious error and (ii) either "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant" or "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Moon*, 2022 IL 125959, ¶ 20. Without an error, Buschauer's attempt to overcome forfeiture fails. See *id.* ¶ 22.

¶ 41 *Plea Offer*

¶ 42 Buschauer's second contention claims the dismissal analysis notes Buschauer discussed a pretrial offer and asserts the State made a "tentative" 10-year plea offer. According to Buschauer, "[he] spoke not only to attorney Ackerman but also co-trial counsel, Cynthia Giachetti. [He] was told of the State's lesser offense offer, and attorneys Ackerman and Giachetti did not urge or recommend that [he] accept the offer." After these assertions, his brief goes on: "The point is— there was a pretrial offer! And the PC court accepts that factual representation." Buschauer's affidavit asserts that prosecutors communicated a "tentative" offer to him and his family, which he rejected.

¶ 43 Our supreme court has held a petition may be dismissed as frivolous or patently without merit only " 'if the petition has no arguable basis either in law or in fact' "—relying on " 'an indisputably meritless legal theory or a fanciful factual allegation.' " *People v. Allen*, 2015 IL 113135, ¶ 25 (quoting *People v. Hodges*, 234 Ill. 2d 1, 16 (2009)). Meritless legal theories include those completely contradicted by the record, and fanciful factual allegations may be "fantastic or

delusional." *Hodges*, 234 Ill. 2d at 16-17. In evaluating the allegations in the petition, the trial court must take them as true and construe them liberally. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

¶ 44    Before opening statements, the trial court asked the lead prosecutor whether any offers were " 'made in this matter?' " The prosecutor responded, " 'No, your Honor.' " See *supra* ¶ 16. Not one but two experienced defense attorneys were present. Neither objected. As the State indicates in its brief, the defense never mentioned the alleged 10-year offer during posttrial motions, and at sentencing, the defense urged the court to impose day-for-day credit so defendant would only serve 10 years on a minimum 20-year sentence "but made no reference to the alleged 10-year offer— despite the striking similarity between this request and the alleged pretrial offer."

¶ 45    Moreover, we agree with the trial court that although Buschauer repeatedly describes the guilty plea offer as "tentative," nowhere does he explain "what that means, or provid[e] explanatory affidavits from trial counsel." The term "tentative" lacks clarity. Describing the plea offer as "tentative" could imply uncertainty, lack of commitment, or something in the planning stage. Without additional information and context, a "tentative plea offer" has no meaning or significance and, thus, no basis for finding it a plea offer. As the State suggests, at best, it might be a behind-the-scenes offer at risk of alteration or cancellation by the prosecution during negotiations toward a formal offer.

¶ 46    Summary dismissal is warranted when the record "positively rebuts" the allegations. *People v. Knapp*, 2020 IL 124992, ¶ 50 (citing *Allen*, 2015 IL 113135, ¶ 25). There, the petitioner claimed that trial counsel was ineffective because he based his decision not to testify on counsel's private misrepresentations that he could not testify unless corroborative evidence supported his testimony. *Id.* ¶ 34. The Illinois Supreme Court found the trial record contained "nothing to suggest that

petitioner ever alerted the trial court of his desire to testify, that he had any questions about his right to testify, or that he otherwise was unsure about waiving his right to testify." *Id.* ¶ 51.

¶ 47         Finally, although Buschauer references his affidavit as *pro se*, he was represented by counsel who created and filed his postconviction petition. In the lower court and on appeal, his counsel has made a valiant effort to protect Buschauer's constitutional rights. The record reveals Buschauer's attorneys stating in open court that no plea negotiations occurred. So, the record belies Buschauer's contention.

¶ 48         Buschauer characterizes the admonishments to a defendant on plea offers as "mandatory," citing *People v. Curry*, 178 Ill. 2d 509 (1997). But the assertion there was any offer beyond preliminary discussion is positively rebutted when the trial court asked if a plea offer had been made, and the State answered, "No, Your Honor." At the time, Buschauer and his two trial attorneys were present, and they made no objection or contradictory statements.

¶ 49         Our holding should not be seen as minimizing a defendant's right to be informed about pleas. Whenever the State extends a plea offer, a defendant's counsel has a duty to reasonably inform the defendant of the consequences of accepting or rejecting the offer, as well as the potential maximum and minimum sentences that could be imposed. See *People v. Guerrero*, 2011 IL App (2d) 090972, ¶ 61. Here, the circumstances indicate discussions may have occurred, but the State did not present a plea offer as defined under Illinois law. This court has long held that plea agreements are governed to some extent by contract law principles. See *People v. Wells*, 2024 IL 129402, ¶ 21 (" 'A plea agreement results when the prosecutor and the defendant exchange promises to perform or refrain from performing specified actions.' " (quoting *People v. Navarroli*, 121 Ill. 2d 516, 521 (1988))).

¶ 50                                    *People v. Rudd*

¶ 51        Buschauer complains that the dismissal order "simply follow[ed] *Rudd*" without considering his arguments distinguishing *Rudd*, 2020 IL App (1st) 182037, from his case.

¶ 52        *Res judicata* is a proper basis for first stage dismissal of a postconviction petition, preventing reconsideration of issues raised and decided on direct appeal. *People v. Blair*, 215 Ill. 2d 427, 443 (2005). Simply stated, *res judicata* does not permit "a do-over." See *Turczak v. First American Bank*, 2013 IL App (1st) 121964, ¶ 28. Again, first-stage dismissal is warranted when the petition is frivolous or patently without merit. See 725 ILCS 5/122-2.1(a)(2) (West 2022).

¶ 53        In *Buschauer II*, this court thoroughly addressed *Rudd* and found its reasoning persuasive, citing *Rudd* 11 times. *Buschauer II*, 2022 IL App (1st) 192472, ¶¶ 63, 68-71, 73. Indeed, in *Buschauer II*, we held, "For now, we adhere to *Rudd* and find that an officer's failure to inform a suspect that they have a warrant for his arrest does not defeat the validity of an otherwise proper *Miranda* waiver." *Id.* ¶ 73. "For now" acknowledged that a future case—not Buschauer's—might warrant revisiting the issue. In *Buschauer II*, we unequivocally followed *Rudd*.

¶ 54        The doctrines of *res judicata*, along with the law of the case, prevent litigants from taking "two bites out of the same appellate apple." See *People v. Quezada*, 2024 IL App (2d) 210076-B, ¶ 29 ("law-of-the-case doctrine bars relitigating an issue already decided in the same case"). Buschauer has already had his "bite" of the *Rudd* apple.

¶ 55        Affirmed.

---

*People v. Buschauer*, **2025 IL App (1st) 232365**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 13-CR-9408; the Hon. Marc W. Martin, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Allan A. Ackerman, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, David Iskowich, and Daniel Piwowarczyk, Assistant State's Attorneys, of counsel), for the People. |