2025 IL App (1st) 240389-U

No. 1-24-0389

Order filed October 16, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 23 TR 40002492 |
| | ) | |
| FERNANDO MERCADO-GARCIA, | ) | Honorable |
| | ) | Sheree D. Henry, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE QUISH delivered the judgment of the court.
Presiding Justice Navarro and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for driving under the influence is affirmed where the State's evidence was sufficient to establish his conviction and defendant's jury waiver was valid.

¶ 2    Following a bench trial, defendant Fernando Mercado-Garcia was found guilty of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2022)), driving without a valid license (625 ILCS 5/6-101 (West 2022)), operating an uninsured motor vehicle (625 ILCS 5/3-707(a) (West 2022)), disobeying a traffic control signal (red light) (625 ILCS 5/11-306 (West

2022)), driving in the dark without headlights (625 ILCS 5/12-201(a) (West 2022)), and driving too fast for conditions (625 ILCS 5/11-601 (West 2022)). He was sentenced to 18 months of conditional discharge for the DUI conviction, and 4 months of supervision on each of the remaining offenses, to be served concurrently. On appeal, defendant challenges only his DUI conviction, arguing that the evidence was insufficient to prove that he was impaired by alcohol. He also argues that the trial court did not adequately ensure that his waiver of a jury trial was knowing and voluntary. For the following reasons, we affirm.

¶ 3    At a bond review and status hearing, defense counsel answered ready for trial, while the State was not ready. With defendant present, the court asked defense counsel when confirming the trial date, "Is that bench?" Defense counsel responded, "Bench trial on the 17th." The court then instructed defendant that he needed to attend the trial in person, and defendant agreed.

¶ 4    On the day of trial, May 17, 2023, defendant signed and filed a jury waiver form. The waiver stated: "I, the undersigned, do hereby waive jury trial and submit the above entitled cause to the Court for hearing." The following colloquy occurred:

> "THE COURT: [Defendant], I have in my hand a jury waiver; is that your signature?
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: Did you read it, and was it explained to you before you signed it?
>
> DEFENDANT: Yes, your Honor.
>
> THE COURT: Did you understand in signing this you're saying you do not want a jury trial?
>
> DEFENDANT: Yes, ma'am.

THE COURT: Okay. You're answering ready for trial. So you're asking for a bench trial,—

DEFENDANT: Yes, ma'am.

THE COURT: (Continuing) —correct?

DEFENDANT: Yes.

THE COURT: Jury waiver will be accepted.

[DEFENSE COUNSEL]: Thank you, Judge."

¶ 5    At the bench trial, Stickney police officers Hughes and Bredemeier both testified that on the evening of March 1, 2023, they were monitoring traffic from a police vehicle parked at a gas station on the 3900 block of South Harlem Avenue. At around 11 p.m., they observed a blue vehicle with its headlights off driving at a high rate of speed, faster than the other vehicles, towards the intersection of Pershing Road and Harlem Avenue. Both officers identified defendant in court as the vehicle's driver.

¶ 6    Hughes testified that he heard the collision as he pulled out of the gas station. Although he did not see the collision, he saw that two vehicles had collided and separated, rolling away from one another. Hughes drove behind defendant's vehicle and activated his emergency lights to curb the vehicle, which came to a rolling stop. Hughes approached the vehicle and spoke to defendant, who did not appear visibly injured. Hughes saw that the vehicle's airbags had deployed and the front passenger side was "smashed in." Hughes asked defendant for his identification several times and prompted defendant to take his wallet out before defendant produced his identification. Defendant admitted that he did not have insurance.

¶ 7    Hughes testified that defendant appeared "impaired" throughout their interaction, and he

was slow to respond to questions and requests. Defendant told Hughes he was sorry. Hughes smelled the "strong odor of an alcoholic beverage." Defendant's eyes were bloodshot and swollen. Hughes had been the main arresting officer for about 350 DUI cases during his 23-year career as a police officer and witnessed and assisted in many others. Hughes opined, based on his personal and professional experiences and observations, that defendant was under the influence of alcohol. Hughes explained that, before the accident, defendant appeared to be driving over the lane lines, at night without his lights on, at a high rate of speed. Hughes smelled alcohol as he approached the vehicle. Defendant seemed confused and did not appear to realize that he had been in an accident or that the airbags had deployed. Hughes also had to "[lead] him a little" to find his driver's license. Defendant was apologetic and turned more uncooperative as the interaction continued. Hughes also considered that defendant took his time stepping out of his vehicle and appeared "to go side to side" when he walked.

¶ 8 The State published portions of the footage from Hughes's body camera. One portion shows Hughes at the driver's side window of defendant's vehicle. The vehicle's deployed airbag is visible. Hughes instructed defendant to put the vehicle in park and asked for defendant's identification. Defendant appeared confused and looked around the interior of his vehicle. Hughes repeated his request and suggested that defendant check his pockets. Defendant held up his wallet and looked inside it. Hughes told defendant that he hit another vehicle and Hughes needed proof of insurance. Defendant appeared surprised and asked, "I hit another car?" Hughes confirmed and pointed out that defendant's airbags deployed. Defendant handed Hughes his driver's license and stated that he did not have his insurance card. Defendant's speech seemed slightly slurred.

¶ 9 A later portion of the footage shows a different officer speaking to defendant. Defendant

refused an ambulance and stated he was not injured. The officer repeatedly instructed defendant to exit the vehicle. Defendant eventually opened the door and stepped out. He appeared unsteady on his feet, using the door frame to steady himself. Defendant swayed as he walked towards the sidewalk. An officer placed a hand on defendant's back to steady him.

¶ 10    While standing on the sidewalk, defendant appeared confused about the situation, and officers explained that he needed to complete paperwork refusing medical care. Defendant responds, "No, man, I'm cool, right?" Hughes points to the damage to defendant's vehicle, and defendant looks surprised when he sees it. After completing the paperwork, the officers repeatedly told defendant to stand back and remain on the sidewalk.

¶ 11    On cross-examination, Hughes testified that he determined that defendant was speeding based on his observation of traffic. Hughes was unable to confirm whether defendant moved to avoid a collision because he only saw the accident's aftermath. Defendant published a portion of Hughes's body camera footage. In it, Hughes tells another officer that "[defendant] did some kind of weird maneuver" before the collision.

¶ 12    Hughes agreed that the odor of alcohol alone does not show when or how much a person has had to drink. He explained that other signs of impairment are also evaluated. Defendant was slow to respond and appeared confused. Hughes did not know the results of defendant's medical evaluation or whether he sustained a head injury from the accident, but noted that defendant stated he was not injured and refused the ambulance.

¶ 13    Officer Bredemeier testified that he saw the collision. Defendant's vehicle traveled at a high rate of speed with its lights off and through a red light before crashing into a vehicle making a left turn. Defendant's vehicle eventually "veered over" to the right curb. When defendant exited

his vehicle, Bredemeier observed that defendant appeared unsteady on his feet, walked very slowly, spoke in a slightly slurred manner, and had glassy, bloodshot eyes. Bredemeier smelled the strong odor of alcoholic beverage on defendant's breath and body. Bredemeier observed an open can of beer in the back seat of defendant's vehicle.

¶ 14    On cross-examination, Bredemeier testified that defendant's vehicle had a red light at the intersection. Bredemeier was unable to see the traffic light for the other vehicle. He never saw defendant trip and fall, but an officer was holding defendant as he waited on the sidewalk for paramedics. Bredemeier affirmed that defendant's airbags had deployed and that being hit by an airbag could cause confusion, unsteadiness, and the release of a powder affecting the eyes. It was "policy" to have an individual evaluated at the hospital after a crash in which airbags had deployed. Bredemeier never saw the beer can in defendant's hands or defendant drink from it. Bredemeier did not inventory the can. Defendant's speech seemed slurred, but Bredemeier did not know how he usually spoke. On redirect, Bredemeier opined that airbag deployment would not cause an individual to smell like alcohol.

¶ 15    Berwyn police officer Bancroft testified that he had been working for the police department for just over a year and received training in DUI detection and investigation at the police academy. When he arrived at the accident scene, he observed a vehicle with extensive damage to the front passenger's side and spoke with the Stickney police officers. Bancroft approached the vehicle and spoke with the driver, whom he identified in court as defendant. Defendant did not appear to comprehend what Bancroft was saying. Bancroft asked him multiple times to exit the vehicle. Defendant eventually exited when told it was to see paramedics. Defendant's gait was "not very good," and he "swayed and stumbled," requiring Bancroft to guide him as he walked to the

sidewalk.

¶ 16    Bancroft observed that defendant's eyes were watery, bloodshot, and glassy. He also smelled a strong odor of alcoholic beverages on defendant's breath, especially when speaking with him "in closer quarters." Defendant did not mention any injuries. Bancroft accompanied defendant in the ambulance to the hospital. Defendant appeared confused and disoriented during the ambulance ride, and Bancroft remained with him for approximately four hours. At the hospital, defendant's behavior was erratic and "rapidly changing." Defendant "would go from sleeping to crying to laughing to being very angry and screaming at [Bancroft]." Bancroft read the warning to motorist to defendant and defendant refused chemical testing.

¶ 17    Bancroft arrested defendant for DUI based on defendant's lack of cognitive orientation and his observations of defendant's bloodshot, watery, and glassy eyes and the strong odor of alcohol on his breath. Bancroft also considered the Stickney officers' observations.

¶ 18    On cross-examination, Bancroft acknowledged that the symptoms of shock following an accident can be both mental and physical. Bancroft confirmed that defendant stood on the sidewalk without support, but testified that he had to "monitor" him because "he seemed as though he might stumble and fall over" when walking to the sidewalk. Bancroft did not ask defendant whether he had been drinking or perform any field sobriety tests. On redirect examination, Bancroft testified that he did not perform field sobriety tests as a "safety precaution" because defendant appeared angry, and he did not feel comfortable getting close to defendant.

¶ 19    Defendant moved for a directed finding. The court granted the motion as to the offense of driving with an open container of alcohol, but denied the motion as to the other offenses. Defendant admitted a portion of the body camera footage, previously published, showing

defendant standing on the sidewalk unassisted for over four minutes.

¶ 20    After the close of evidence, the court found defendant guilty of DUI, disobeying a traffic control device, driving too fast for conditions, driving without headlights, operating a vehicle without insurance, and driving without a valid driver's license. The court cited the officers' testimonies and noted that the body camera footage showed that defendant appeared confused, had slightly slurred speech, and walked slowly with unsteady footing and used the car door for balance after exiting the vehicle.

¶ 21    Defendant filed a Motion to Reconsider and/or for New Trial, arguing, *inter alia*, that the evidence was insufficient to prove that he was under the influence of alcohol and the court failed to adequately consider the alternative explanation that the symptoms the officers observed resulted from defendant's involvement in a traffic accident and the possibility that he was in shock. The court denied the motion, explaining that it did consider alternative explanations, but found the evidence sufficient and that the State proved that defendant was driving under the influence of alcohol beyond a reasonable doubt.  The court specifically stated that it found Hughes to be credible and believed his testimony.

¶ 22    Defendant was sentenced to 18 months of conditional discharge for the DUI conviction and 4 months' supervision for each of the other offenses, to be served concurrently.

¶ 23    On appeal, defendant challenges only his DUI conviction, arguing that the State failed to prove he was impaired by alcohol.  In considering a challenge to the sufficiency of the evidence, this court examines "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Emphasis omitted.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[I]t is the responsibility of the trier of fact to fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." (Internal quotation marks omitted.) *People v. Aljohani*, 2022 IL 127037, ¶ 66 (quoting *People v. Howery*, 178 Ill. 2d 1, 38 (1997)). "This standard applies whether the evidence is direct or circumstantial, and 'circumstantial evidence that meets this standard is sufficient to sustain a criminal conviction.'" *Id.* ¶ 66 (quoting *People v. Jackson*, 2020 IL 124112, ¶ 64). In reviewing the evidence, we will not retry the defendant or substitute our judgment for that of the trier of fact. *Id.* ¶ 67.

¶ 24 "'A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt.'" *Id.* ¶ 67 (quoting *People v. Belknap*, 2014 IL 117094, ¶ 67). We will not reverse a conviction just because the evidence is contradictory or because the defendant claims the witness was not credible. *People v. Bonaparte*, 2014 IL App (1st) 112209, ¶ 41. Rather, "[t]he positive, credible testimony of a single witness, even if contradicted by the defendant, is sufficient to convict a defendant." *People v. Sauls*, 2022 IL 127732, ¶ 52.

¶ 25 To prove a defendant guilty of DUI, the State must establish that he was in physical control of a motor vehicle while under the influence of alcohol. 625 ILCS 5/11-501(a)(2) (West 2022). Defendant does not dispute that he was in physical control of the vehicle, but disputes that the State proved he was under the influence of alcohol.

¶ 26 "'A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care.'" *People v. Morris*, 2014 IL App (1st) 130512, ¶ 20 (quoting Illinois Pattern

Jury Instructions, Criminal No. 23.29 (4th ed. 2000)); see also *People v. Olvera*, 2023 IL App (1st) 210875, ¶ 25. Whether a defendant was intoxicated is a question for the trier of fact based on the credibility of the witnesses and sufficiency of the evidence. *Morris*, 2014 IL App (1st) 130512, ¶ 20. The State must show that the defendant was under the influence of alcohol to a degree that rendered him incapable of driving safely. *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 57; *Morris*, 2014 IL App (1st) 130512, ¶ 20.

¶ 27 Circumstantial evidence alone may be sufficient to prove a defendant guilty of DUI. *Morris*, 2014 IL App (1st) 130512, ¶ 20. "Where the arresting officer provides credible testimony, scientific proof of intoxication is unnecessary." *Id.* ¶ 20. The trier of fact may consider the officer's observations, such as the defendant's speech, appearance, conduct, and the odor of alcohol on his breath. *Groebe*, 2019 IL App (1st) 180503, ¶ 58.

¶ 28 Here, the circumstantial evidence was sufficient to prove beyond a reasonable doubt that defendant was impaired by alcohol. The State presented the testimony of three police officers who observed defendant and his conduct. The court credited the testimony of these officers in its ruling. Officer Hughes, who had been the arresting officer in about 350 DUI cases, opined that defendant was under the influence of alcohol. Hughes testified that he smelled an odor of alcohol emanating from defendant's vehicle. Officer Bredemeier testified he smelled a strong odor of alcohol from defendant's breath and body. Hughes and Bredemeier consistently described defendant's eyes as glassy and bloodshot, his speech as slurred, and his walk as unsteady. See *Morris*, 2014 IL App (1st) 130512, ¶ 20 ("testimony that a defendant's breath smelled of alcohol and his or her eyes were glassy and bloodshot is relevant and admissible evidence in a DUI prosecution").

¶ 29 Hughes further testified that defendant appeared surprised to learn that he had been

involved in an accident and that his airbags had deployed. Hughes had to repeat himself multiple times before defendant answered questions or complied with simple commands. See *Olvera*, 2023 IL App (1st) 210875, ¶ 39 (a driver's "indifferent" attitude toward an accident, confusion or lack of awareness regarding the evident facts of the situation may be considered circumstantial evidence of impairment). Officer Bancroft had to repeatedly ask defendant to exit his vehicle and noted defendant's lack of cognitive orientation, his bloodshot, watery, and glassy eyes, and unsteadiness as he walked. Bancroft smelled a strong odor of alcohol on defendant's breath. Also, defendant refused to submit to chemical testing, which shows a consciousness of guilt. *Id.*

¶ 30      In addition to the officers' observations of defendant following the collision, defendant's actions while operating his vehicle prior to the accident also give rise to a reasonable inference that he was impaired by alcohol. The collective testimonies of Hughes and Bredemeier show that, just moments before the collision, defendant drove outside the traffic lane at a rate of high speed without headlights at 11 p.m. Defendant then drove through a red light. This was sufficient for the trier of fact to conclude that defendant's ability to operate his vehicle was, in fact, impaired. *People v. Nunes*, 143 Ill. App. 3d 1072, 1076 (1986). Moreover, Hughes's body camera footage confirmed the officers' observations of signs of impairment, including defendant's inability to follow directions, confusion, slightly slurred speech, and unsteady walk. See *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 34 ("defendant's driving through a barricaded street, confusion, inability to follow directions, and agitation and combativeness were all behaviors consistent with and indicative of alcohol impairment."). Also, the opinion testimony of a police officer may be sufficient on its own to support a finding that a driver was impaired, if the officer has the "'relevant skills, experience, or training to render such an opinion.'" *Olvera*, 2023 IL App (1st) 210875, ¶

- 11 -

41 (quoting *People v. Lenz*, 2019 IL App (2d) 180124, ¶ 117). Here, Hughes testified to his training, experience and skills as a police officer and in DUI detection and investigation over his more than 23-year career as a police officer and more than 350 DUI investigations. He opined that defendant was under the influence of alcohol and gave a detailed basis for his opinion based on defendant's conduct and condition. The circuit court specifically found Hughes to be credible and believed his testimony.

¶ 31    When viewing the totality of the evidence in a light most favorable to the State, we find that a rational trier of fact could infer from defendant's appearance and his conduct both before and after the collision that he was under the influence of alcohol. See *People v. Swenson*, 2020 IL 124688, ¶ 35 (stating that "[a]ll reasonable inferences are drawn in favor of a finding of guilt").

¶ 32    Defendant argues that the evidence was insufficient to establish he was impaired by alcohol because his appearance and behavior at the time of the accident could be attributable to the accident or a health condition. Defendant also contends that officers admitted that an odor of alcohol was not proof of intoxication and conceded that defendant's behaviors could be attributed to shock or a head injury. However, simply because alternative explanations existed to explain defendant's behavior, the trial court, as the trier of fact, was "not required to disregard inferences that flow from the evidence or search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Weeks*, 2012 IL App (1st) 102613, ¶ 32. Further, defendant did not complain of a head or any other injury or that his eyes were irritated by the airbags or allergies. In fact, he denied any injury and declined medical treatment. Additionally, in denying defendant's motion for a new trial, the circuit court explained that it did consider alternative explanations, but found the evidence sufficient and that the State proved that defendant

was driving under the influence of alcohol beyond a reasonable doubt, specifically finding Hughes credible.  We reject defendant's argument.

¶ 33    Defendant also contends that there was no scientific evidence that he was under the influence of alcohol, and the officers did not administer a breathalyzer test. However, scientific evidence was not necessary as the three officers present at the scene provided credible testimony from which it could be reasonably inferred that defendant was under the influence of alcohol, which was corroborated by the body camera footage. The circuit court relied on the officers' testimony and specifically found Hughes credible.  See *Morris*, 2014 IL App (1st) 130512, ¶ 20 ("Where the arresting officer provides credible testimony, scientific proof of intoxication is unnecessary.").

¶ 34    In sum, viewing the evidence, as we must, in a light most favorable to the State, it was not so unreasonable, improbable, or unsatisfactory that no rational trier of fact could have found beyond a reasonable doubt that defendant was driving under the influence of alcohol. See *McLaurin*, 2020 IL 124563, ¶ 38.

¶ 35    Defendant next argues that his jury waiver was invalid where the trial court did not adequately ensure that his waiver was knowing and voluntary. The federal and state constitutions both guarantee the right to a jury trial. U.S. Const., amend. VI and XIV; Ill. Const. 1970, art. I, §§ 8, 13; *People v. West*, 2017 IL App (1st) 143632, ¶ 10. A defendant may waive this right, so long as the waiver is both knowing and voluntary. *West*, 2017 IL App (1st) 143632, ¶ 10.

¶ 36    There are no specific requirements or admonitions that the trial court must give for an effective jury waiver. *People v. Bannister*, 232 Ill. 2d 52, 66 (2008). The trial court must ensure the defendant is aware that the facts of his case will be determined by a judge and not a jury, and

the consequences of that decision. *Id.* at 69. The court may also consider the defendant's prior interactions with the justice system in determining if the waiver was made knowingly. *People v. Reed*, 2016 IL App (1st) 140498, ¶ 7. When a defendant challenges the validity of a jury waiver, he bears the burden of establishing the waiver is invalid. *Id.* We review whether a defendant has knowingly and voluntarily waived his right to a jury trial *de novo*. *Bannister*, 232 Ill. 2d at 66.

¶ 37 To determine whether a waiver is valid, this court must look to the particular facts and circumstances of the case. *West*, 2017 IL App (1st) 143632, ¶ 10. A written waiver is one means the defendant can use to waive his right. *Id*. Although a signed waiver alone is not sufficient to show defendant's understanding, it is sufficient to show that the waiver was knowingly made. *Reed*, 2016 IL App (1st) 140498, ¶ 7. Additionally, "[o]ne factor that provides evidence of a knowing waiver is the defendant's silence when defense counsel requests a bench trial." *People v. Buschauer*, 2025 IL App (1st) 232365, ¶ 35.

¶ 38 Defendant acknowledges that he did not challenge the validity of his jury waiver in the trial court, but asks this court to review the issue under the plain error doctrine. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). Under that doctrine, a reviewing court may consider unpreserved claims of error (1) "where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error and (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Belknap*, 2014 IL 117094, ¶ 48. Because the validity of a jury waiver affects a defendant's fundamental right to a jury trial, we may review the issue under the plain error doctrine. *Buschauer*, 2025 IL App (1st) 232365, ¶ 40. However, the first step in a plain

error analysis is to determine whether an error occurred. *People v. Hatcher*, 2024 IL App (1st) 220455, ¶ 41. We find no error here as defendant has not demonstrated that his jury waiver was invalid.

¶ 39    Defendant signed a written jury waiver before trial which provided: "I, the undersigned, do hereby waive jury trial and submit the above entitled cause to the Court for hearing," providing evidence that a waiver was knowingly made. *Reed*, 2016 IL App (1st) 140498, ¶ 7.  In addition to the written waiver, the court questioned defendant regarding its contents. Specifically, the court asked—and defendant affirmed—that he read the waiver and the waiver was explained to him before he signed it, he understood that, by signing the form, he did not want a jury trial and that he was asking for a bench trial. Moreover, prior to trial, defense counsel told the trial court, in defendant's presence, that defendant would have a bench trial. Defendant did not object, which provides evidence of a knowing waiver.  See *Buschauer*, 2025 IL App (1st) 232365, ¶ 35; *Reed*, 2016 IL App (1st) 140498, ¶ 7.  Finally, defendant's criminal history, set forth in open court during the bond hearing, reinforces an inference that he knew what a jury trial was and understood his right to a jury trial, but chose not to exercise it.  *West*, 2017 IL App (1st) 143632, ¶ 13. He had at least two prior misdemeanor convictions and one prior felony conviction, giving rise to a reasonable presumption that he was familiar with the criminal justice system and the right to a jury trial. *Reed*, 2016 IL App (1st) 140498, ¶ 7; *People v. Rizwan*, 2025 IL App (1st) 230510-U, ¶ 14. "The record does not support an inference that defendant was so unfamiliar with the criminal justice system that he did not understand the difference between a jury trial and a bench trial." *Hatcher*, 2024 IL App (1st) 220455, ¶ 46. Based on all of these factors, we conclude that the trial court did not err by accepting defendant's jury waiver.

¶ 40     Nevertheless, defendant maintains that his waiver was not valid because the court did not explain or confirm that he understood the difference between a bench and jury trial and failed to ensure that his jury waiver was not the product of any threats or promises. However, the "law does not require these admonishments or questions." *Hatcher*, 2024 IL App (1st) 220455, ¶ 44. Further, the "fact that the trial court did not inquire into whether [defendant's] waiver was the product of any promise or threat is an insufficient basis to undermine his otherwise valid waiver." *West*, 2017 IL App (1st) 143632, ¶ 12; see also *Hatcher*, 2024 IL App (1st) 220455, ¶ 43 (finding valid waiver where defendant signed a jury waiver form and confirmed in open court upon the trial court's questioning that he signed it and he was asking for a bench trial and not a jury trial).

¶ 41     Defendant also argues that the evidence of his waiver was insufficient because counsel never explicitly waived the right to a jury trial on the record, referencing only that they were ready for a bench trial in the context of scheduling the trial. However, counsel's reference to a bench trial during a status hearing was not the only discussion of defendant's waiver of a jury trial. Rather, as set forth above, defendant affirmatively waived his right to a jury trial by submitting a signed jury waiver, which was confirmed during his questioning by the trial court. See *Buschauer*, 2025 IL App (1st) 232365, ¶ 38 (finding the defendant voluntarily, intelligently and knowingly waived his right to a jury trial where defendant, who had no prior criminal history, was present when his attorney requested a bench trial, the court asked him directly whether he wanted a bench trial, and his attorney asked the court to admonish him in open court).

¶ 42     Defendant further contends that the content of the written jury waiver did not explain his constitutional right to a jury trial and the difference between a bench and jury trial. He also contends that the written waiver was inadequate to establish any conversations with his counsel

before waiving his right to a jury trial. However, defendant, upon questioning from the circuit court, confirmed that the written jury waiver form had been explained to him before he signed it.

¶ 43 Defendant argues that the admonishments in his case were inadequate when compared to those in *People v. Tooles*, 177 Ill. 2d 462 (1997). Although the admonishments in *Tooles* were more expansive, "the *Tooles* court explicitly stated that while a trial court must ensure that a defendant's waiver of his right to a jury trial is understandingly made, 'no set admonition or advice is required before an effective waiver of that right may be made.'" *West*, 2017 IL App (1st) 143632, ¶ 14 (quoting *Tooles*, 177 Ill. 2d at 469). Also, there was no written jury waiver in *Tooles*, further distinguishing *Tooles* from this case. Defendant's reliance on *People v. Johnson*, 2019 IL App (1st) 162517, ¶ 19, is misplaced because in that case, although there was a written jury waiver, there was no discussion in open court with defendant about that waiver. Here, however, there is both a jury waiver signed by defendant and a discussion in open court about the waiver. Thus, *Johnson* is distinguishable.

¶ 44 In sum, we find that defendant's signed, written waiver, the court's questioning of him regarding that waiver, his silence when his attorney requested a bench trial and his prior experience with the criminal justice system, taken together, are sufficient to establish that defendant knowingly and voluntarily waived his right to a jury trial. See *Rizwan*, 2025 IL App (1st) 230510-U, ¶ 16. Thus, we find that defendant has not established any error, much less plain error, with respect to his jury waiver.

¶ 45 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 46 Affirmed.